**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01983-LTB

HOLLY J. HART,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

    Plaintiff, Holly J. Hart, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying her application for Social Security Disability benefits and Supplemental Security Income benefits. Following a December 5, 2006, hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on December 28, 2006. The Appeals Council determined there was no basis for changing the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted her administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I REVERSE and REMAND.

**I.  BACKGROUND**

    Plaintiff was born on July 17, 1954, and was fifty-two years of age at the time of the hearing. [Administrative Record "AR" 53, 368]. She has completed high school and four years

of college education. [AR 95]. She previously worked in the restaurant industry as a manager, bartender, waitress, cook, and cleaner. [AR 97–98]. She also previously owned a kitchen where she prepared and served food, ordered supplies, cleaned, and did bookkeeping. [AR 97–98]. Plaintiff alleges she is disabled because of osteoporosis, migraines, diverticulitis, memory problems, back pain, and heart problems. [AR 90]. Plaintiff's alleged onset date is June 5, 2005. [AR 53].

<u>A.  Plaintiff's Medical History</u>

Plaintiff reports a history of chronic abdominal pain beginning at age 27 when she underwent a hysterectomy subsequent to endometriosis. [AR 176]. Plaintiff also reports a history of narcotics use beginning at age 12, when she was first put on opiates for migraine headaches. [AR 176]. Plaintiff's current narcotic pain medications include Hydrocodone, Hydromorphone, Oxycodone, and Methadone. [AR 172, 174]. Plaintiff also takes other medications including Zofran, Protonix, and Zaleplon. [AR 174].

Plaintiff was treated for abdominal pain in May 2004. [AR 172, 174]. She was diagnosed with chronic right lower quadrant pain, erosion of the terminal ileum, and diverticulosis. [AR 172–75]. Plaintiff's treating physician noted Plaintiff's history of opiate use and remarked that "any pain the patient experiences will be amplified by her opiate habituation and low pain threshold." [AR 178]. Plaintiff presented to the emergency room with additional complaints of abdominal pain in August 2004, and was diagnosed with acute abdominal pain of unknown etiology, acute dehydration, and acute opiate addiction. [AR 167].

In July 2005, Plaintiff was admitted into the emergency room at Swedish Medical Center with chest pain and pressure, dizziness, lightheadedness, shortness of breath, and nausea. [AR

203].  She also reported pain radiating from her chest to her back.  [AR 203].  When placed on a telemetry monitor, Plaintiff displayed limited ventricular tachycardia.  [AR 203].  Further testing revealed left ventricular systolic dysfunction with an ejection faction between 40 and 50 percent.  [AR 203–07].  Doppler screening showed mild-to-moderate mitral valve regurgitation and mild tricuspid valve regurgitation.  [AR 209].

In January 2006, Plaintiff underwent lumbar spine imaging procedures at University of Colorado Hospital.  [AR 341].  The imaging revealed a loss of disc height at T11 representing a mild T11 vertebral body wedge stress fracture, and mild spondylosis at L2–L3.  [AR 341].  A physical exam revealed no tenderness in Plaintiff's back, no neurological deficits, and full orientation and normal affect.  [AR 344].

Dr. Laura Moran conducted a consultative examination of Plaintiff in February 2006.  [AR 225–28].  Plaintiff reported a history of migraine headaches and chest pain, memory problems, and back pain.  [AR 225].  An x-ray of Plaintiff's spine showed minimal osteophyte formation at several levels and endplate sclerosis at several levels.  [AR 228].  An electrocardiogram ("EKG") showed normal sinus rhythm, but was otherwise "distinctly abnormal."  [AR 228].  Dr. Moran opined that Plaintiff should have no difficulties sitting, standing, walking, carrying a normal amount for someone of Plaintiff's age and stature, bending, and squatting.  [AR 228].  Dr. Moran noted that her opinions were not based upon any medical records, and, accordingly, that her medical opinion did not "truly" or "fully" address Plaintiff's history of chest pain or headaches.  [AR 228].  Dr. Moran recommended "additional cardiac testing or at least obtaining of the results of her hospitalization to make up more full understanding of what this patient's cardiac picture is."  [AR 228].

Plaintiff was examined by a state medical psychiatric consultant in March 2006, who determined Plaintiff suffered from nonsevere substance addiction disorders due to acute opiate addiction. [AR 147–60]. The state medical consultant found Plaintiff had mild limitations in her ability to maintain concentration, persistence, or pace, but otherwise found no limitations. [AR 157].

In June 2006, Plaintiff was admitted to the emergency room after testing at her primary care physician's office revealed sinus tachycardia depressions. [AR 232–33]. Plaintiff reported chronic chest pain radiating into her left arm and shoulder accompanied by shortness of breath, decreased exertion, sweating, nausea and heart palpitations. [AR 233]. Plaintiff was diagnosed with likely chronic obstructive pulmonary disease and chronic pain of unknown causes. [AR 234]. The attending physician described Plaintiff as having the "ability to only climb one flight of stairs and no ability to carry anything for any significant distance." [AR 236].

In November 2006, Plaintiff was admitted for a cardiology examination at Denver Health Medical Center. [AR 252–53]. The examination revealed "low normal" left ventricular systolic function and mild to moderate mitral valve regurgitation. [AR 252]. Follow up examinations revealed granulomatous disease in Plaintiff's right lung. [AR 257–58]. Plaintiff complained of pain at a rating of ten on a scale of one to ten. [AR 260].

### B. Disability Hearing

At Plaintiff's hearing on December 5, 2006, Plaintiff testified she was currently taking methadone and aspirin for pain. [AR 371]. Plaintiff testified she experienced chest pain every day that ran down her left arm. [AR 371–72]. The pain caused dizziness, shortness of breath, and loss of balance. [AR 372]. Plaintiff testified she had stomach cramps, diarrhea, and pain

due to hiatal hernia, acid reflux, and diverticulitis or diverticulosis. [AR 372]. Plaintiff also testified she had migraine headaches that caused loss of vision and numbness in Plaintiff's left arm. [AR 374]. Plaintiff testified she had mild degenerative disc disease in her lower back that caused constant dull aching pain on a daily basis. [AR 374–75]. Plaintiff's back pain caused her "leg to go out from underneath of [her] completely" and caused her "not to be able to walk at times." [AR 374–75]. Plaintiff also testified she suffered from severe osteoporosis, and had a leaking heart valve. [AR 379–80, 385–87].

Plaintiff testified she could not walk 100 feet while carrying five pounds without taking a break. [AR 375–76]. Plaintiff testified it took two days to wash a sink full of dishes. [AR 376]. Plaintiff was able to cook microwave foods, had difficultly with household chores and personal grooming, and it took her two to three hours to prepare to leave the house. [AR 376–78]. Plaintiff testified she had difficulty reading a newspaper because of her reduced powers of concentration. [AR 377]. Plaintiff testified she was 35 pounds over her normal weight. [AR 377]. Plaintiff testified she could sit for only about ten minutes without experiencing pain in her lower back, spine, and "rear end." [AR 378–79]. She could not climb stairs without a handrail or without difficulty. [AR 379]. She could not pick a book up off the floor without difficulty. [AR 379].

The ALJ then question Plaintiff's boyfriend, Raymond Kava. Kava testified that Plaintiff spent most of her day in bed and could not stand for very long. [AR 381]. Kava testified Plaintiff was in constant pain. [AR 381–82]. Kava testified that he and Plaintiff shared laundry chores, and Plaintiff was unable to vacuum because she had difficulty standing. [AR 382]. Kava testified Plaintiff's pain and heart palpitations had worsened over the past three years. [AR

382–84].

The ALJ then briefly questioned a vocational expert ("VE") regarding Plaintiff's past relevant work. The ALJ asked the VE whether Plaintiff had previously worked as a waitress, a cook, a cleaner, a bartender, and a restaurant manager. [AR 389]. The VE testified that Plaintiff had performed those jobs. [AR 389]. The ALJ asked the VE no additional questions. Plaintiff did not cross-examine the VE.

### C.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since her onset date of June 5, 2005. [AR 22]. Applying the second step, the ALJ determined Plaintiff had three severe impairments—atypical chest pain, hypertension, and diverticulosis—and nonsevere impairments including degenerative disc disease, memory and concentration difficulties, and a history of opiate dependence. [AR 22–23]. The ALJ concluded Plaintiff's headaches were insufficiently documented to find them a medically determinable impairment. [AR 23]. Applying the third step, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 24]. Applying the fourth step, the ALJ determined Plaintiff was able to perform past relevant work as a waitress, bartender, and restaurant manager. [AR 26]. As the ALJ found Plaintiff was not disabled at step four, it was unnecessary to proceed to step five: determining whether the claimant was able to perform other work that exists in significant numbers in the national economy. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("If at any point in the

process the Secretary finds that a person is disabled or not disabled, the review ends.").

In reaching his conclusion at step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work—which the ALJ defined as work involving lifting of no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, and a "good deal of walking or standing, or some pushing and pulling of arm or leg controls when seated"—with the additional restriction of no exposure to heights or dangerous machinery, no climbing ladders or scaffolds, and no work-related driving. [AR 23]. In making this finding, the ALJ accorded "great weight" to Dr. Moran's February 2006 consultative exam "because it is supported by the detailed and largely normal exam findings and is consistent with the other medical evidence of record, which reveals only 'mild' or 'minimal' abnormalities and documents only infrequent complaints of pain or limitations." [AR 24]. The ALJ found Plaintiff's physical and memory complaints to be unsupported by Dr. Moran's examinations. [AR 26].

The ALJ further found the alleged severity of Plaintiff's pain and physical limitations—as described in the testimony and other statements of Plaintiff and her boyfriend—were unpersuasive. [AR 25]. The ALJ found Plaintiff's complaints of pain to her medical providers were infrequent—"for abdominal pain only twice and prior to the alleged onset of disability, in May and August 2004; for chest pain only twice, in July 2005 and June 2006; and for lower back pain only once, in January 2006"—and therefore were inconsistent "with the extreme symptoms and limitations she alleges." [AR 25–26]. Accordingly, the ALJ concluded "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR 25].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse. *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

## III.  DISCUSSION

Plaintiff raises four issues on appeal: (1) the ALJ erred by determining that Plaintiff's degenerative disc disease was not severe; (2); the ALJ erred by failing to obtain a consultative examination; (3) the ALJ's findings regarding Plaintiff's RFC were not supported by substantial evidence; and (4) the ALJ erred by not informing Plaintiff of her right to cross-examine the vocational expert.

### A.  The ALJ Erred by Determining Plaintiff's Degenerative Disc Disease was not Severe

The ALJ relied on Dr. Moran's opinion to conclude Plaintiff's degenerative disc disease

was not severe. An impairment or combination of impairments is not severe under the Act if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.921. A claimant's showing that she has a severe impairment at level two has been described as "de minimis." *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Even under that nondemanding standard, however, a claimant's impairment cannot be found to be severe—or not severe—without an adequately developed medical record. *See Hawkins*, 113 F.3d at 1170.

The medical record considered by the ALJ was sufficient to make a finding that Plaintiff's degenerative disc disease was not severe. Dr. Moran's opinion—on which the ALJ largely relied—was based upon a physical examination as well as x-rays of Plaintiff's spine. [AR 228]. Although Plaintiff previously underwent lumbar spine imaging procedures that revealed a "mild" T11 vertebral body wedge stress fracture, and "mild" spondylosis at L2–L3, Plaintiff's examining physician did not address whether these "mild" findings would impact Plaintiff's ability to do basic work activities. [AR 341]. Accordingly, the only opinion evidence in the record addressing the work-related impact of Plaintiff's disc disease was Dr. Moran's opinion. As both Dr. Moran and Plaintiff's examining physician reached essentially the same objective result—namely, "mild" or "minimal" disc disease—the ALJ properly relied on Dr. Moran's medical analysis of the work-related impact of Plaintiff's disc degeneration. *See Hawkins*, 113 F.3d at 1165 (holding, in the absence of any contrary objective evidence, the ALJ is entitled to rely on the opinion of a reviewing physician).

### B.  The ALJ Erred by Failing to Obtain a Consultative Examination

The ALJ determined Plaintiff had the severe impairment of "atypical chest pain."

Nonetheless, he did not find Plaintiff's chest pain limited her ability to work at step four. Plaintiff argues the ALJ could not have made this determination without further developing the record. I agree.

The Tenth Circuit teaches that an ALJ is obligated to base his RFC findings on record evidence. *See Fleetwood v. Barnhart*, 211 F. App'x 736, 740–41 (10th Cir. 2007). If the file contains insufficient evidence to make an RFC finding, the ALJ is required to further develop the record. *See id.*; *see also Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996). Once the claimant establishes the existence of a severe impairment, the ALJ has a duty to order a consultative exam when "the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. This duty is especially strong in the case—as here—of an unrepresented claimant. *See Carter*, 73 F.3d at 1021.

Like the evidence related to Plaintiff's degenerative disc disease, the evidence related to Plaintiff's chest pains largely consisted of objective reports from various treating and examining physicians. Unlike the ALJ's conclusions regarding Plaintiff's disc disease, however, the ALJ's conclusions regarding the impact of Plaintiff's chest pain on her ability to work was not based on expert medical opinion. Indeed, the only physician who provided an analysis of Plaintiff's work-related limitations, Dr. Moran, reported Plaintiff's EKG as "distinctly abnormal" and recommended "additional cardiac testing" or "at least obtaining the results of her hospitalization to make up more full understanding of what [Plaintiff]'s cardiac picture is." [AR 228]. Medical consultant Alberta Ziomek reached a similar conclusion in her advice report. [AR 162]. Under such circumstances, the ALJ should have contacted Plaintiff's treating physicians for additional

clarification or ordered a consultative examination that included a review of Plaintiff's complete medical records. *See Fleetwood,* 211 F. App'x at 740–41; *see also Hawkins*, 113 F.3d at 1168–69 (holding, where it is apparent from the medical records that there is a reasonable possibility that the claimant is impaired to some degree, the ALJ should order a consultative examination).

### C.  The ALJ's Findings were not Supported by Substantial Evidence

In light of the ALJ's failure to order a consultative examination that included a review of Plaintiff's complete medical records, the ALJ's RFC findings at step four are not supported by substantial evidence. *See Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (holding, where the ALJ failed to properly develop the record as to a claimant's disability, substantial evidence did not support the finding that the claimant retained the residual functional capacity to perform sedentary work); *see also Fleetwood*, 211 F. App'x at 740–41.

### D.  The ALJ Erred by not Informing Plaintiff of her Right to Cross-Examine the VE

Plaintiff argues the ALJ should have informed her of her right to cross-examine the vocational expert, and the failure of the ALJ to do so was error. I disagree. Initially, I note that the Notice of Hearing specifically notified Plaintiff of her right to "present and question witnesses," informed her that a vocational expert would testify at the hearing, and provided her with her right to be represented, which she waived. [AR 43–47, 51, 365]. Moreover, at Plaintiff's hearing, the ALJ asked the VE no hypothetical questions, nor any questions regarding the requirements of Plaintiff's past jobs. The VE's testimony was limited to a summary of Plaintiff's past relevant work—the substance of which is not disputed. As the ALJ did not rely on the vocational expert to provide an opinion regarding Plaintiff's ability to perform work, any

error—if it existed at all—was harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing the appropriateness of harmless error analysis in Social Security Disability cases); *see also St. Anthony v. U.S. Dep't of Health and Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) ("In civil cases such as this, the party challenging the action below bears the burden of establishing that the error prejudiced that party.").

## IV.  CONCLUSION

Because a disability hearing is nonadversarial, an ALJ is obligated to develop the record even where—as here—the claimant does not make such a request.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir.1993); *Hawkins*, 113 F.3d at 1164–68.  The need for additional documentation of Plaintiff's chest pain should have been apparent from the administrative record, and the ALJ was therefore obligated to obtain more evidence regarding the impact of Plaintiff's chest pain on her functional limitations.  *See Hawkins*, 113 F.3d at 1167–68.  The ALJ's failure to further develop the record shows his decision was not based on substantial evidence.  *See Fleetwood*, 211 F. App'x at 741.  On remand, the ALJ may obtain evaluations of Plaintiff's functional limitations from her treating doctors in a format that will be of use to the ALJ and/or may obtain a detailed evaluation from a consulting doctor.  *See id.*  In either case, the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5.

Accordingly, IT IS ORDERED that the December 28, 2006, administrative decision is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: September  4 , 2009.

                                    BY THE COURT:

                                      s/Lewis T. Babcock  
                                    Lewis T. Babcock, Judge